UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAIDAN KASSEM, et al.,

Plaintiffs,

v.

ANTONY J. BLINKEN, et al.,

Defendants.

No. 1:21-cv-01400-DAD-HBK

ORDER GRANTING PRELIMINARY INJUNCTION

(Doc. Nos. 1, 2)

On September 20, 2021, plaintiffs Raidan Kassem ("Raidan"), Osamah Abdulhameed Muthana Nasser ("Osamah"), Raina Mohamed Abdulaim ("Raina"), and plaintiffs Osamah's and Rania's two minor children, R.O.A.M.N. and R.O.A.M.N.(2), ("Minor Plaintiffs"), filed this action against defendants Antony J. Blinken, Merrick B. Garland, Alejandro Mayorkas, U.S. Department of State, U.S. Department of Homeland Security, U.S. Department of Justice, Kentucky Consular Center, Jonathan Goodale Pratt, and United States Embassy, Djibouti. (Doc. No. 1 ("Compl.").) On the same day, plaintiffs filed an *ex parte* motion for an emergency preliminary injunction. (Doc. No. 2-2.) On September 22, 2021, the government filed an opposition to the pending motion, and plaintiffs filed a reply thereto on September 23, 2021. (Doc. Nos. 8, 9.) Pursuant to General Order No. 617 addressing the public health emergency posed by the coronavirus pandemic, the court takes this matter under submission to be decided on

the papers, without holding a hearing. For the reasons explained below, the court will grant plaintiffs' motion for preliminary injunction.

**BACKGROUND**

Plaintiff Raidan is a U.S. citizen who resides in Bakersfield, California. (Doc. No. 9 at 4–5.) Plaintiffs Osamah, Raina, and the Minor Plaintiffs are Yemeni nationals (collectively, "Yemeni Plaintiffs"), who presently reside in Yemen. (Compl. at ¶¶ 10–13.)

On June 6, 2020, plaintiff Osamah won the diversity visa lottery for the 2020 application cycle, which is a program to facilitate the immigration of eligible individuals from countries with historically low rates of immigration to the United States. (*Id.* at ¶ 10); *see* 8 U.S.C. § 1153(c) ("Diversity Visa Program"); *see also Iddir v. I.N.S.*, 301 F.3d 492, 494–95 (7th Cir. 2002) (reviewing, generally, operation of Diversity Visa Program); *Przhebelskaya v. U.S. Bureau of Citizenship & Immigration Servs.*, 338 F. Supp. 2d 399, 400–02 (E.D.N.Y. 2004) (same). Plaintiff Osamah alleges that he completed his diversity visa application, as did plaintiff Raina and the Minor Plaintiffs as derivative applicants of plaintiff Osamah's application. (Compl. at ¶¶ 10–13, 36.)

Plaintiff Raidan alleges that he incorporated a corporation on February 23, 2021 in reliance on plaintiff Osamah's "selection documentary qualification confirmation," that he intends to hire plaintiff Osamah through the corporation, and that he has invested thousands of dollars in immigration fees, as well as research and attorneys' fees, in reliance upon plaintiff Osamah's visa being approved following the procedures set out in federal law, regulation, and agency guidance. (Doc. Nos. 2-2 at 7; 2-4 at 212.)

The Yemeni plaintiffs allege that they have completed all requirements to obtain the diversity visas, but that they have not been scheduled for consular visa interviews. (Compl. at ¶¶ 41–49.) Under the diversity visa program, if a visa is not issued by the end of the fiscal year in which an individual applies, here September 30, 2021, the applicants permanently lose their lottery slot. *See* 8 U.S.C. § 1154(a)(l)(I)(ii)(II).

Plaintiffs' complaint asserts four substantive causes of action. The first arises under the Administrative Procedure Act ("APA"), which allows a court to "compel agency action

unlawfully withheld or unreasonably delayed." (Compl. at ¶¶ 76–90); 5 U.S.C. § 706(1). The second arises under the Mandamus Act, 28 U.S.C. §§ 1361, 1651, seeking to compel defendants to perform a non-discretionary duty, including lawful adjudication of their visa applications. (*Id.* at ¶¶ 91–106.) The third is a request for a declaratory judgment that the defendants have failed to discharge a mandated official duty. (*Id.* at ¶¶ 107–110.) Plaintiffs' fourth cause of action arises under the Take Care Clause of the United States Constitution, seeking a judgment that the Department of State's suspension of and alleged untimely adjudication of visa applications is invalid because it is "unfaithful" to the Immigration and Nationality Act of 1965 ("INA"). (*Id.* at ¶¶ 111–115.)

As noted above, plaintiffs filed a motion for preliminary injunction to compel defendants to conduct consular visa interviews and issue final decisions on plaintiffs' pending visa applications by September 28, 2021. (Doc. No. 2-2.)

## LEGAL STANDARDS

### A. Motion for Preliminary Injunction

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'") (quoting *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). The Ninth Circuit has also held that an "injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for Wild Rockies*, 632 F.3d at 1134–35 (quoting *Lands Council v. McNair*,

/////

/////

/////

537 F.3d 981, 987 (9th Cir. 2008) (*en banc*), *overruled on other grounds by Winter*, 555 U.S. 7.[1] The party seeking the injunction bears the burden of proof as to each of these elements. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

**B. Administrative Procedure Act**

Pursuant to the APA, a court "shall compel agency action unlawfully withheld or unreasonably delayed" where an agency fails to take a discrete action it is required to take. 5 U.S.C. § 706(1); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). A plaintiff asserting a claim of unreasonable delay under the APA must show that the agency (1) had a nondiscretionary duty to act and (2) unreasonably delayed in acting on that duty. *Norton*, 542 U.S. at 63–65; 5 U.S.C. §§ 555(b), 701(a)(2).

In evaluating the reasonableness of an agency delay, a court considers six factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

*In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 836–37 (D.C. Cir. 2012) (quoting

---

[1] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *All. for the Wild Rockies*, 632 F.3d at 1134. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984) ("*TRAC*")). [T]he central question is whether the agency's delay is so egregious as to warrant mandamus." *Id.* at 837 (internal quotation marks omitted).

## ANALYSIS

Before turning to the merits of the pending motion for preliminary injunction, the Court must address two threshold issues. The United States has challenged the standing of all of the plaintiffs and, relatedly, whether venue is proper in this district.

### A. Standing

The government briefly argues that the Yemeni plaintiffs lack standing to bring this action because they do "not have a constitutional right to obtain the diversity visa." (Doc. No. 8 at 10.) The government asserts that an alien outside the United States, like the Yemeni plaintiffs, "typically lacks standing to challenge immigration determinations." (*Id.* (quoting *Yuk-Ling Wu Jew v. Att'y Gen.*, 524 F. Supp. 1258, 1259 n.4 (D.D.C. 1981) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)).)

Nonresident aliens lack standing to challenge final consular decisions under the "constitutional violation" exception to the doctrine of consular nonreviewability. *See Mohamed v. Pompeo*, No. 1:19-cv-01345-LJO-SKO, 2019 WL 4734927, at *2 (E.D. Cal. Sept. 27, 2019) (collecting cases); *Benjamin v. United States Dep't of State*, No. 17-CV-03587-LB, 2018 WL 1142124, at *4 (N.D. Cal. Mar. 2, 2018) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)) (finding that nonresident alien does not have standing to challenge the denial of a visa application); *Mostofi v. Napolitano*, 841 F. Supp. 2d 208, 210–12 (D.D.C. 2012) (reviewing the exception to the doctrine of consular nonreviewability applicable where a U.S. citizen or legal resident plaintiff asserts that the visa decision violates a constitutionally protected liberty interest). But here, like the plaintiffs in *Mohamed* found to have had standing, the consular nonreviewability doctrine is wholly inapplicable because, as discussed below, no visa determination has been made. *See Mohamed*, 2019 WL 4734927 at *2.

Accordingly, the court finds the Yemeni plaintiffs have standing to sue. As alleged in the complaint and pending motion for preliminary injunction, the Yemeni plaintiffs have suffered an

injury in fact (unreasonable delay in processing their visa applications), the injury is traceable to defendants, and a favorable decision here will redress their injury. See *id.* (finding the alien plaintiffs had standing to sue where their visa applications had been completed but not yet received a final determination on the eve of the expiration of their diversity visa eligibility); *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1102 (9th Cir. 2007) (articulating the basic elements of Article III standing). The Yemeni plaintiffs also "plainly fall within the zone of interest of the Diversity Visa Program." *See Mohamed*, 2019 WL 4734927 at *2; *see also V. Real Estate Grp., Inc. v. U.S. Citizenship & Immigration Servs.*, 85 F. Supp. 3d 1200, 1206 (D. Nev. 2015) (noting that, in an APA challenge to visa adjudication, whether the plaintiff fell within zone of interest of "relevant provisions of the Immigration and Nationality Act" is not an "especially demanding" test).

The government also argues that plaintiff Raidan lacks standing because his connection to this case—payment of visa and attorneys' fees for the Yemeni plaintiffs and incorporation of a corporation and the related offer of employment to plaintiff Osamah—is insufficient to support his standing in a Diversity Visa Program case given that diversity visas are submitted by the visa applicant from overseas, not by a United States sponsor. (Doc. No. 8 at 12–13.) The government asserts that there is no precedent for the proposition that a prospective employer may have standing to challenge any aspect of the diversity visa process in judicial proceedings. (*Id.* at 13.) However, the government does not cite any precedent for the proposition that prospective employers lack standing in such cases. (*Id.*) Modern jurisprudence suggests a "trend [ ] toward enlargement of the class of people who may protest administrative action" under the APA. *Raduga USA Corp. v. U.S. Dep't of State*, 440 F. Supp. 2d 1140, 1148 (S.D. Cal. 2005) (quoting *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 154 (1970)). The expedited nature of this motion has not permitted the court to examine thoroughly whether plaintiff Raidan falls within the zone of interest of the statutory scheme at issue. *See V. Real Estate Grp.*, 85 F. Supp. 3d at 1208. Nonetheless, although the Diversity Visa Program does not provide a direct role for a potential employer, plaintiff Raidan's "assertions of economic impact

/////

appear to be sufficient to confer standing upon him under the APA." *See Mohamed*, 2019 WL 4734927 at *3.

**B. Venue**

The government also contends that the Eastern District of California is not the proper venue for this action, arguing that plaintiffs should have brought suit in the District of Columbia, where other selectees of the Diversity Visa Program have previously brought suit. (Doc. No. 8 at 11–12, 14.)

Under 28 U.S.C. § 1391(e), which governs venue in which a defendant is an officer, employee, or agency of the United States, a civil action may be brought in "any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action."

As plaintiffs note, plaintiff Raidan, as a resident of Bakersfield, California, is the only direct link to this judicial district. (Doc. No. 9 at 4.) If he has standing, then venue is undeniably proper here under 28 U.S.C. § 1391(e)(2). If plaintiff Raidan does not have standing, however, there is no obvious basis for this court to find that § 1391(e) suggests venue is proper in this district. Under 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Given the urgent nature of the pending motion, even assuming venue is improper in this district, the interests of justice would favor transfer, rather than dismissal. Furthermore, a transferor court may take some action prior to transfer if necessary to preserve the rights of the parties. See *Bel Canto Design, Ltd. v. MSS HiFi*, 813 F. Supp. 2d 1119, 1123–24 (D. Minn. 2011) (continuing temporary restraining order while action is moved to another venue). Here, the case was filed in this district in good faith based upon the "not wholly unreasonable premise that plaintiff [Raidan] has standing and therefore that venue is proper here." *See Mohamed*, 2019 WL 4734927 at *3.

Based on the requirement that a successful visa applicant must arrive in the United States before the close of the FY 2020 Diversity Visa Program, the very act of transferring this case

would cause the visa opportunity for the Yemeni plaintiffs to expire. *See Mohamed*, 2019 WL 4734927 at *3. Therefore, the court will evaluate the merits of the pending motion for preliminary judgment.

**C. Motion for Preliminary Injunction**

As noted at the outset, as the party seeking preliminary injunctive relief, plaintiffs must make a sufficient showing as to all four prongs of the *Winter* test in order to be entitled to the requested preliminary relief. *All. for the Wild Rockies*, 632 F.3d at 1135.

Here, it is clear that plaintiffs will suffer irreparable harm in the absence of preliminary relief. As the government acknowledges, plaintiffs' eligibility under the Diversity Visa Program expires at the end of the fiscal year on September 30, 2021. 8 U.S.C. § 1153(e)(2); 22 C.F.R. § 42.33(f); (Doc. No. 8 at 5). Plaintiffs are entitled to the opportunity to have their visa adjudicated as prescribed by 8 U.S.C. § 1202(b), and risk permanently and irreparably losing that opportunity at the end of the 2021 fiscal year. *See P.K. v. Tillerson*, 302 F. Supp. 3d 1, 10 (D.D.C. 2017) (granting injunctive relief in light of "the potential irreparable harm that Plaintiffs face[d]" of not having their visas adjudicated); *Gomez v. Trump* ("*Gomez I*"), 485 F. Supp. 3d 145, 196 (D.D.C. 2020), *amended in part*, 486 F. Supp. 3d 445 (D.D.C. 2020), and *amended in part sub nom. Gomez v. Biden* ("*Gomez III*"), No. 20-cv-01419-APM, 2021 WL 3663535 (D.D.C. Aug. 17, 2021). Below, the court will turn to the remaining factors.

1. <u>Likelihood of Success on the Merits</u>

Plaintiffs also bear the burden of demonstrating that they are likely to succeed on the merits of this action or, at the very least, that "serious questions going to the merits were raised." *All. for the Wild Rockies*, 632 F.3d at 1131.

Here, plaintiffs contend that defendants have a mandatory, nondiscretionary duty to act upon plaintiffs' pending visa applications, and that defendants have unreasonably delayed and unlawfully withheld adjudication of their visa applications in violation of § 706(1) of the APA. (Doc. No. 2-2 at 16–17.) In opposition, defendants argue that plaintiffs have not alleged "a nondiscretionary duty to take action . . . within a certain timeframe" and that there is no unreasonable delay because other diversity visa applications are being processed. (Doc. No. 8 at

15–17.) Defendants also contend plaintiffs' applications are not unreasonably delayed because the Djibouti Embassy is "likely already at capacity for its immigrant visa appointments for September," and that plaintiffs' visa applications have yet to be deemed documentarily qualified, and thus rank below other diversity visa applications waiting for consular visa interviews and final determinations. (*Id.* at 6–7.)

The court agrees with plaintiffs that defendants have a nondiscretionary duty to review and adjudicate plaintiffs' visa applications. As many other district courts have found, 8 U.S.C. § 1202(b) "imposes a mandatory duty on consular officers to review and adjudicate immigrant visa applications." *Filazapovich v. Dep't of State*, No. 21-cv-00943-APM, 2021 WL 4127726, at *17 (D.D.C. Sept. 9, 2021) (quoting *Gomez III*, 2021 WL 3663535 at *20). Section 1202(b) dictates that "immigrant visa applications *shall* be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b) (emphasis added). There is therefore a "precise section of the INA" that imposes a mandatory duty on defendants to review and adjudicate plaintiffs' visa applications. *See Filazapovich*, 2021 WL 4127726 at *17 (holding that "Defendants had a specific and nondiscretionary obligation to review and adjudicate Plaintiffs' immigrant visa applications"); *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016) (finding that legislation using the word "'shall' indicates a mandatory duty"); *Meina Xie v. Kerry*, 780 F.3d 405, 406 (D.C. Cir. 2015) (noting that plaintiff "points to a precise section of the INA" in establishing a nondiscretionary duty).

Defendants' argument that no unreasonable delay has occurred in this case because other visa applications are being processed "misapprehends the scope of the section 706(1) [of the APA] inquiry." *See Filazapovich*, 2021 WL 4127726 at *17. The issue is "whether Defendants have taken action vis-à-vis the specific Plaintiffs bringing the claims of unreasonable delay or unlawful withholding," not whether defendants have acted at all on similarly situated applications. *Id.* Defendants have not cited any authority for the proposition that because an agency acts on some visa applications that it cannot be sued for unreasonably delaying its consideration of other applications. *Id.* As such, the court turns to the analysis of the six *TRAC*

/////

factors to determine the question of whether defendants have unreasonably delayed processing and adjudicating plaintiffs' visa applications.

a. *TRAC Factors One and Two Favor Plaintiffs: Rule of Reason or Timetable*

Defendants argue that consideration of the first two *TRAC* factors weigh in their favor because, in lieu of an express timetable provided by Congress, the Department of State "has outlined a rational and reasonable scheme to prioritize certain visa applicants as services resume" that prioritizes immediate relative, K-1 fiancé, and family preference immigrant visa applications. (Doc. No. 8 at 18.)[2] However, Congress has provided "[an]other indication of the speed with which it expects" defendants to process immigrant visas: the fiscal year cutoff for processing diversity visas. *TRAC*, 750 F.2d at 80 ("where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"); *Gomez I*, 485 F. Supp. 3d at 196 (holding that "[t]he specificity and relative brevity" of the September 30 deadline manifests Congress's intent that the State Department undertake good-faith efforts to ensure that diversity visas are processed and issued before the deadline"). Congress's instructions are the "most important" consideration in the TRAC analysis. *In re People's Mojahedin Org. of Iran*, 680 F.3d at 837. Although the government points to the Department of State's prioritization of other visa categories as an explanation for the delay in this case, "Congress legislated the fiscal year deadline knowing that the Department of State would have other, competing draws on its resources." *Filazapovich*, 2021 WL 4127726 at *18; *see also In re People's Mojahedin*, 680 F.3d at 837 ("Congress undoubtedly knew the enormous demands placed upon the Secretary and nonetheless limited her time to act"). Furthermore, as the Director of the Kentucky Consular Center acknowledges, defendants created this delay due to their own actions in interpreting Presidential Proclamation 10014 by not scheduling any diversity visa interview appointments for

[2] The immediate relative, K-1 fiancé, and family preference immigrant visa applications prioritized by the Department of State, however, would appear to be distinguishable from the category in which plaintiffs fall since applications in those prioritized categories apparently do not expire or are subject to renewal.

the 2021 fiscal year until late February 2021 for March appointments when the "[s]cheduling for a normal program year first starts in August for appointments in October." (Doc. No. 8-2 at ¶¶ 7–9.) It was "plainly unreasonable for [defendants] to stop processing visas for five months of FY 2021 based on an erroneous interpretation of the law." *Filazapovich*, 2021 WL 4127726 at *18 (citing *Gomez III*, 2021 WL 3663535, at *19 (finding that "surely a delay that results in the permanent loss of a statutory benefit is not reasonable")).

Accordingly, the undersigned rejects the government's argument in this regard and concludes that consideration of the *TRAC* factors one and two favor the granting of plaintiffs' motion for preliminary injunctive relief.

b. *TRAC Factors Three and Five Favor Plaintiffs: Health, Welfare, and the Interests Prejudiced*

The parties also dispute *TRAC* factors three and five, which consider delays "when human health and welfare are at stake" and "the nature and extent of the interest prejudiced by delay." *TRAC*, 750 F.2d at 79–80. Plaintiffs argue that their health and welfare interests are prejudiced by "the real risk that the family will be unable to immigrate to the United States together and [p]laintiffs will suffer economic loss and deprivation of property." (Doc. No. 2-2 at 18.) The government, while acknowledging the impact on plaintiffs' lives, argues that the relief plaintiffs seek "would simply benefit [p]laintiffs to the detriment of other immigrant visa applicants" who would be prejudiced in the same manner plaintiffs contend that they are being harmed. (Doc. No. 8 at 19.)

On balance, the undersigned concludes that consideration of the third and fifth *TRAC* factors favor plaintiffs. Plaintiffs have "established dire prejudice because they risk losing their (likely) once-in-a-lifetime opportunity to immigrate to the United States and have demonstrated how delays in visa adjudication threaten their welfare." *Filazapovich*, 2021 WL 4127726 at *19 (quoting *Gomez III*, 2021 WL 3663535, at *19). Indeed, defendants concede that plaintiffs here have established such prejudice. (Doc. No. 8 at 19.) As the district court in *Filazapovich* noted, defendants' arguments that prioritizing plaintiffs over other applicants merely shifts the prejudice

to other applicants are arguments better suited to the analysis of the fourth *TRAC* factor, addressed below. *Filazapovich*, 2021 WL 4127726 at *19; *see also TRAC*, 750 F.2d at 80 (describing the fourth factor to be considered as "the effect of expediting delayed action on agency activities of a higher or competing priority").

c. *TRAC Factor Four is Neutral: Effect of Expediting Action on Higher or Competing Priorities*

Defendants contend that the granting of plaintiffs' requested relief is inappropriate because it "simply 'reorder[s]' a queue of applications seeking adjudication." (Doc. No. 8 at 18 (citing *Tate v. Pompeo*, No. 20-cv-3249-BAH, 2021 WL 148394, at *11 (D.D.C. Jan. 16, 2021).) Defendants argue that the conclusion reached by the district court in *Tate* should apply "even more powerfully here . . . because of the challenges presented by the COVID-19 pandemic, which has created unusual and extreme resource and personnel challenges for Defendants." (*Id.* at 19 (citing *Liu v. Blinken*, No. 21-cv-00629-TJK, 2021 WL 2514692, at *7 (D.D.C. June 18, 2021).)

Defendants' argument in this regard is certainly not without merit. But defendants did not comply with their statutory and nondiscretionary obligation to process diversity visa applications pursuant to 8 U.S.C. § 1202(b) and their failure to do so unlawfully delayed the processing of plaintiffs' applications despite plaintiff Osamah's selection for that processing fifteen months ago. *See Filazapovich*, 2021 WL 4127726 at *20; (Doc. No. 2-2 at 19). Further, as the district court in *Filazapovich* explained, "defendants' complete cessation of processing diversity visas based on an erroneous interpretation of the law distinguishes Plaintiffs' cases from cases . . . where the plaintiffs relied wholesale . . . on agency prioritization." *Id.*; (Doc. No. 8-2 at ¶¶ 7–9 (noting that FY2021 diversity visa appointments were not scheduled until late February, in contrast to the usual August scheduling, due to Presidential Proclamation 10014). As such, a finding of unreasonable delay in this case is not a mere reorganization of priorities as contemplated by the court in *Tate*, but "a rectification of Defendants' decision to flout the INA by sitting on its hands." *Filazapovich*, 2021 WL 4127726 at *20; *see also Tate*, 2021 WL 148394, at *11.

Accordingly, the State Department's lack of resources to adequately address the backlog of visa applications caused in part by the COVID-19 pandemic is not dispositive in resolving the pending motion. The court therefore concludes that consideration of the fourth *TRAC* factor is neutral in this context.

d. *TRAC Factor Six is Neutral: Agency Impropriety*

The sixth *TRAC* factor, which considers the role of agency impropriety in the delay, is also neutral here. *See TRAC*, 750 F.2d at 80. Defendants argue that, as of February 2021, they began processing DV-2021 applications, have since adjudicated at least 3,000 applications, and that there is no "specific, unequivocal command" to adjudicate all diversity visa applications before the end of the fiscal year. (Doc. No. 8 at 19–20.) Plaintiffs make no argument as to the consideration of this factor.

As noted above, the court "need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. Here, plaintiff Osamah was first selected for the Diversity Visa Program fifteen months ago in June 2020. (Doc. No. 2-2 at 19.) Despite the plaintiffs following subsequent State Department instructions to complete their applications, no further processing of the applications has occurred. (*Id.*) On balance, consideration of the *TRAC* factors support a finding that defendants have unreasonably delayed processing plaintiffs' diversity visa applications, such that plaintiffs are likely to succeed on their unreasonable delay claim.

2. <u>Balance of Equities and Public Interest</u>

Plaintiffs must also demonstrate that that "the balance of the equities tips in [their] favor[ ] and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The balance of the equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs contend that the issuance of an injunction is in the public interest here because the public interest will be served in requiring defendants to fulfil their mandatory duties, and in diversity visa applicants having their applications timely considered without unreasonable delay. (Doc. No. 2-2 at 22–23.) Plaintiffs also argue that the balance of equities tips in their favor

because they have complied in good faith with the requirements of the diversity visa program, including fulfilling all necessary procedures, and "seek only those actions of [d]efendants that are required under the law." (*Id.* at 22 (citing *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983).)

The court agrees. The public and plaintiffs have a countervailing interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal quotation marks omitted). While the public certainly has an interest in defendants processing visas such as the immediate relative visas that the State Department has prioritized, "it also has an interest in diversity visa applicants like plaintiffs having their applications considered without the delays perpetuated by Defendants' unlawful actions." *See Filazapovich*, 2021 WL 4127726 at *25. Additionally, and perhaps most importantly, "diversity visa applicants are in a unique position among visa applicants because their eligibility for a visa ends on the last day of the fiscal year." *Id.* Therefore, the court concludes that the balance of the equities and the public interest favor the granting of the requested injunctive relief in this case.

**CONCLUSION**

For the reasons stated above, the court finds that defendants have unreasonably delayed processing of the Yemeni Plaintiffs' visa applications in light of the impending statutory deadlines and that all other requirements for mandatory injunctive relief have been satisfied. Therefore, the court mandates defendants and their agents, employees, officers, and representatives to review the documents, schedule a consular visa interview, and issue a decision on the visa applications of Osamah Abdulhameed Muthana Nasser and all derivatives in defendants' case number 2021AS35359, on or before noon California time, September 28, 2021. The adjudication must occur before the end of the fiscal year on September 30, 2021; otherwise

/////

/////

/////

/////

plaintiffs will effectively lose permanently the opportunity to apply for the immigrant visas to reside permanently in the United States.

IT IS SO ORDERED.

Dated: **September 24, 2021**

UNITED STATES DISTRICT JUDGE